## McINTYRE v. KANSAS CITY COCA COLA BOTTLING CO.

## McINTYRE et al. v. KANSAS CITY COCA COLA BOTTLING CO.

Nos. 5294–5295.

United States District Court
W. D. Missouri, W. D.

Aug. 24, 1949.

John W. Oliver, Kansas City, Mo., for plaintiffs.

Henry Depping, Kansas City, Mo., for defendant.

RIDGE, District Judge.

In the above actions plaintiffs premise their right of recovery of damages from defendant for breach of implied warranty of merchantability, arising out of the sale of a bottle of coca cola, manufactured and bottled by defendant in the State of Missouri. The complaint charges that the infant plaintiff's parents purchased six bottles of coca cola from an Atlantic and Pacific Tea Company Store; that six days after the purchase the plaintiff (approximately two years old) "was carrying one of the said bottles in the kitchen of her home, (when) said bottle of coca cola exploded with such force that pieces of glass from the exploding bottle were driven into (her) face * * * and one particular piece of glass was driven directly into (her) left eye;" and that as a result the infant plaintiff has been permanently injured; that from the time of the "purchase until the explosion of (the bottle) said bottles were handled by all persons in a safe and usual manner." Damages are prayed accordingly. Defendant interposes the defense that the complaints "fail to state a claim upon which relief can be granted." By agreement of parties, that defense is now submitted to the Court.

The issue thus presented raises the question whether under Missouri law recovery of damages may be had from the manufacturer of goods, by the donee of a vendee of a retail vendor, for breach of implied warranty of merchantability. Missouri has not adopted the Uniform Sales Act. There is no direct expression by the highest courts of that State on the subject. Therefore, we must examine the case law of Missouri to ascertain if there is "any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements" of its courts that will lead us to a determination of the liability here claimed. Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488, 489; Mattson v. Central Elec. & Gas Co., 8 Cir., 174 F.2d 215; Wilmington Trust Co. v. Mutual Life Ins. Co., D.C., 68 F.Supp. 83. If such data is available, then we may not indulge in "judicial legislation" and attempt to formulate or apply a legal axiom that is opposite thereto, or may do violence to "the legal mind of the state." Yoder v. Nu-Enamel Corp., supra [117 F.2d 489]; Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

What is the law of the State of Missouri on implied warranty of fitness or merchantability? In that class of cases involving food and drink, for immediate consumption, the intermediate appellate courts of Missouri have specifically ruled that there is an implied warranty of fitness of such food and drink for human consumption; and have sustained recovery of damages by the immediate vendee against the vendor for breach thereof, whether the sale was made in an original package or not. Smith v. Carlos, 1932, 215 Mo.App. 488, 247 S.W.

710

468; Fantroy v. Schirmer, Mo.App., 1927, 296 S.W. 235; DeGouveia v. H. D. Lee Mercantile Co., 1936, 231 Mo.App. 447, 100 S.W.2d 336; Bell v. S. S. Kresge, Mo.App., 1939, 129 S.W.2d 932. In Beyer v. Coca Cola Bottling Co., Mo.App., 1934, 75 S.W. 2d 642; Madouros v. Kansas City Coca Cola Bottling Co., 1936, 230 Mo.App. 275, 90 S.W.2d 445; Nemela v. Coca Cola Bottling Co., Mo.App., 1937, 104 S.W.2d 773; McNicholas v. Continental Baking Co., Mo.App., 1938, 112 S.W.2d 849, and Carter v. St. Louis Dairy Co., Mo.App., 1940, 139 S.W.2d 1025, said courts have affirmed recovery of damages for personal injuries sustained by a consumer (the immediate vendee of a retail vendor) against the manufacturer or maker of food and drink prepared for immediate consumption and containing putrid or harmful substances. The rule laid down in that class of cases by the intermediate appellate courts of Missouri when imposed upon the manufacturer, is stated in Madouros v. Kansas City Coca Cola Bottling Co., supra, as follows [230 Mo.App. 275, 90 S.W.2d 449]:

"The obligation of the manufacturer should not be based alone on privity of contract. It should rest, as was once said, upon 'the demands of social justice.' * * * 'We may judicially recognize that the contents are sealed up, not open to the inspection or test, either of the retailer or of the customer, until they are opened for use, and not then susceptible to practical test, except the test of eating. When the manufacturer puts the goods upon the market in this form for sale and consumption, he, in effect, represents to each purchaser that the contents of the can are suited to the purpose for which it is sold, the same as if an express representation to that effect were imprinted upon a label. Under these circumstances, the fundamental condition upon which the common-law doctrine of caveat emptor is based—that the buyer should "look out for himself"—is conspicuously absent.'

"Under modern conditions, when products of food or drink have been prepared under the exclusive supervision of the manufacturer and the consumer must take them as they are supplied, the representa-

tions constitute an implied contract, or implied warranty, to the unknown and helpless consumer that the article is good and wholesome and fit for use. If privity of contract is required, then, under the situation and circumstance of modern merchandise in such matters, privity of contract exists in the consciousness and understanding of all right-thinking persons."

In cases involving objects other than food or drink, the intermediate appellate courts of Missouri have sustained recovery of damages for breach of implied warranty where the buyer buys goods for a particular purpose and the manufacturer or seller of such goods undertakes to supply them for that special purpose. Lee v. J. B. Sickles Saddlery Co., 38 Mo.App. 201; Aultman, Miller & Co. v. Hunter, 82 Mo.App. 632; Moore v. Koger, 113 Mo.App. 423, 87 S.W. 602; Glasgow Milling Co. v. Burgher, 122 Mo.App. 14, 97 S.W. 950; Atkins Bro. Co. v. Southern Grain Co., 119 Mo.App. 119, 95 S.W. 949; Kimball-Fowler Cereal Co. v. Chapman & Dewey Lbr. Co., 125 Mo. App. 326, 102 S.W. 625; Cline v. Mock, 150 Mo.App. 431, 131 S.W. 710; Morton Elec. Co. v. Schramm, Mo.App., 277 S.W. 368; Columbia Weighing Mach. Co. v. Young, 222 Mo.App. 144, 4 S.W.2d 828; Columbia Weighing Mach. Co. v. Fitzgibbons, Mo.App., 43 S.W.2d 897; Progressive Finance & Realty Co. v. Stempel, 231 Mo.App. 721, 95 S.W.2d 834; Farmers Bank of Trenton v. Ray & Son, Mo.App., 167 S.W.2d 963. In some of the cases thus decided by said courts, there is dicta to the effect that though the implied warranty considered was one relating to a particular purpose, it was in effect a warranty of merchantability. See The Kimball-Fowler Cereal Co. v. Chapman & Dewey Lbr. Co., supra, and Glasgow Milling Co. v. Burgher, supra. However, it seems clear from a reading of such decisions that though the courts in the course of these opinions make mention of a warranty of merchantability, or the application of such doctrine to the facts involved would indicate a holding of implied warranty of merchantability, that the courts in reality seek to apply the rule of "fitness for a particular purpose" and do not intend to

extend the doctrine of implied warranty to merchantability generally.

The Supreme Court of the State of Missouri has not specifically decided the question of implied warranty as applied by the intermediate appellate courts of that State, in food and drink cases as above stated. That Court has, however, in the limited number of cases appearing before it, definitely sustained the rule of implied warranty as applied to sales for a particular purpose, where the purchaser is shown to have relied upon the seller's judgement in that respect. Mark v. H. D. Williams Cooperage Co., 204 Mo. 242, 103 S.W. 20; Hunter v. Waterloo Gasoline Engine Co. Mo.App., 260 S.W. 970; Busch & Latta Painting Co. v. Woermann Const. Co., 310 Mo. 419, 276 S.W. 614; London Guarantee & Accident Co. Ltd. v. Strait Scale Co., 322 Mo. 502, 15 S.W.2d 766, 64 A.L.R. 936.

So it would appear from the foregoing decisions of the appellate courts of Missouri that it is ostensibly the definitive law of that State that in food and drink cases, and in cases involving a sale of goods for a particular purpose, recovery may be had for breach of implied warranty of fitness. The question remains whether either such apparent axioms can be applied to the facts in the case at bar, or whether it may be inferred therefrom that the appellate courts of Missouri might reasonably be expected to extend such doctrine so as to include the facts here considered. That the definitive law of Missouri as stated and applied in the above-referred-to decisions is not decisive of the instant matter, is readily apparent. Whether the doctrine therein expressed would be extended to include the facts now before this Court is cast in substantial doubt; doubt of such hue and color that the only reasonable inference that can be made is that recovery for breach of an implied warranty of "merchantability" generally cannot be had in that State.

There is a very reasonable analogy between a bottle which explodes from some reaction of its contents and the contents of a bottle that contains deleterious substance injurious to health. Where the intermediate appellate courts of Missouri have sustained a right of recovery for breach of implied warranty for the latter, it could very readily be assumed that such courts would also authorize and sustain a recovery under like theory for the former circumstance. This would seem apparent from the decision in the Madouros case, supra, and from the decision of the Kansas City Court of Appeals in Marra v. Jones Store Co., Mo.App., 170 S.W.2d 441. In the last-mentioned case, recovery was affirmed by the Kansas City Court of Appeals for breach of implied warranty of fitness in the sale of a lady's blouse. The Kansas City Court of Appeals there held that a blouse containing deleterious dye substance, not discoverable on reasonable inspection, was not fit. for the particular purpose of being worn by the plaintiff in that case. The ruling there made by such Court was manifestly one involving implied warranty of merchantability. This, notwithstanding that the same Court stated, in DeGouveia v. H. D. Lee Mercantile Co., supra, that it was not disposed to make any further extension of the doctrine of the Madouros case, supra. However, on certiorari granted by the Supreme Court of Missouri, the opinion of the Court of Appeals in the Marra case was quashed, on the ground of being in conflict with controlling previous decisions of the Supreme Court. In State ex rel. Jones Store Co. v. Shain, 352 Mo. 630, 179 S.W.2d 19, the Supreme Court of Missouri held that two factors must appear in an action for breach of implied warranty, "(1) the seller undertaking to furnish for a particular purpose, and (2) the buyer relying on the seller's judgement." The Court there said, 352 Mo. 630, 179 S.W. loc. cit. 21, "The term 'particular purpose,' as used in (implied warranty cases) means a special purpose as distinguished from the ordinary use of the article in question", and ruled that the sale of a lady's blouse for wearing, was a general and not a particular use under its previous decisions. The opinion of the Court of Appeals in the Marra case, supra, was accordingly quashed. One of the controlling previous decisions of the

Supreme Court of Missouri, it was held that the opinion of the Court of Appeals in the Marra case, supra, was in conflict with, was Barton v. Dowis, 315 Mo. 226, 285 S.W. 988, 989, 51 A.L.R. 494. In that case, the Supreme Court of Missouri ruled that in a sale of hogs for breeding stock the only implied warranty involved was that the hogs were fit for that purpose and that such warranty could not be extended to include an implied warranty that the hogs would not communicate cholera to other hogs. Barton v. Dowis, supra, was before the Supreme Court of Missouri on certiorari to the Kansas City Court of Appeals, from an opinion of the latter Court sustaining a right of recovery in the plaintiff for breach of implied warranty of fitness. In its opinion quashing the decision of the Court of Appeals, the Supreme Court, in Barton v. Dowis, supra, stated that an implied warranty was "collateral to the agreement of sale" and that a warrantor is only bound by the terms of his covenant, that the extent of the covenant there considered was only to the fitness of the hogs for breeding purposes, and "could not by any stretch be construed as a covenant to hold the plaintiff harmless from any disease which the purchased hogs might have communicated to (plaintiff's) other herd." As a Court bound to apply the law in diversity actions as declared by the highest court of the State of Missouri, we need not consider whether a diseased hog is fit for breeding purposes, or the particular use to which a lady's blouse may be made. Suffice it to say that the ruling of the Supreme Court of Missouri, as stated and applied in the above-referred-to cases, is clearly to the effect that an "implication of warranty of fitness" is contractual and that a warrantor is only bound by the terms of his covenant with respect thereto. This is made further manifest by that Court in another case, Zesch v. Abrasive Co. of Philadelphia, 353 Mo. 558, 183 S.W.2d 140, 143, 156 A.L.R. 469, where it was held that plaintiff, an employee of the vendee of a "cutting wheel" was denied recovery for breach of implied warranty of "suitability" when the evidence in that case did not "tend to show that defendant-respon-

dent undertook to furnish the cutting wheel for a particular special purpose, as distinguished from the ordinary use of the wheel, and that plaintiff was relying upon the judgment of defendant-respondent that the wheel was suitable for the particular special purpose." The Court there said, 353 Mo. 558, 183 S.W. loc. cit. 143, "Absent such a showing there was no implied warranty of the suitability of the article sold." Although the Supreme Court of Missouri had before it in the Shain and Dowis cases, supra, facts involving immediate vendors and vendees, yet the rule laid down and applied in the Zesch case, supra, makes it equally clear that there can be no implied warranty between a manufacturer and consumer unless the two factors stated in State ex. rel. Jones Store Co. v. Shain are shown to exist. The gist of the ruling made by the Court in the here referred to cases is that absent the factors stated, the axiom of caveat emptor is the doctrine to be applied to contracts of sale in Missouri.

This does not mean that the Supreme Court of Missouri has left the buyer of an article injured by some latent defect therein, remediless, or at the mercy of the seller or manufacturer. In Zesch v. Abrasive Co. of Philadelphia, supra, after ruling that no implied warranty was there shown to exist, the Court made this very pertinent statement, 353 Mo. 558, 183 S.W. loc. cit. 143: "A vendor has been subjected to liability (in Missouri) when he should have known an article when used under certain conditions would be dangerous, and could have reasonably anticipated such use." In support thereof, the Court cited Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748, an action in tort, based on negligence. In light of that pronouncement by the Supreme Court of Missouri, and its rulings in Barton v. Dowis, supra, and State ex rel. Jones Store Co. v. Shain, supra, and the other cases of that Court previously cited, holding, as they do, that an implication of warranty is only sustained when it is shown that, (1) the seller undertakes to furnish an article for a particular purpose, and (2) the buyer relies upon the seller's judgment to furnish

the article for that special purpose; and, that a warrantor is only bound by the terms of his covenant; that it is the mind of the Supreme Court of Missouri that "implied warranties" are wholly contractual, and that that Court does not adhere to the rule laid down by the intermediate appellate courts of that State, that "implied warranties are obligations which the law raises upon principles foreign to the actual contract." Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 155, 153 S.W.2d 106, 112. Further, that it is the mind of said Court that the liability of a vendor or manufacturer of an article which he knows could be dangerous when subjected to use under certain conditions, and could have anticipated such use, rests wholly in tort and not in contract. This latter assertion is fortified in the positive fact that said Court has sustained recovery in such actions when based upon a theory of negligence. In the course of its opinions in that class of actions, the Court has repeatedly stated that the "defentant's responsibility rests not on contract but in tort." See Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 498, 39 A.L.R. 1001, where liability of a manufacturer of bottled beverages was declared to exist for injuries incurred by flying glass from explosion of a bottle of beer. Cf. McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122; Tayer v. York Ice Machinery Corp., 342 Mo. 912, 119 S.W.2d 240; Morris v. E. I. du Pont de Nemours & Co., 8 Cir., 68 F.2d 788.

That the doctrine of implied warranty of merchantability is not an axiom likely to be sustained by the Supreme Court of Missouri is the very apparent conclusion of the academician and author of a carefully prepared, digested and soundly reasoned monograph on the subject of implied warranties in Missouri. ("Some Aspects of Implied Warranties in Missouri", by Lee Carl Overstreet, Professor of Law, University of Missouri, appearing in Vol. X, No. 3, Mo. L. Rev., June, 1945.) A United States District Court resident within a state, in a diversity case, may, and should, when looking for "persuasive data" relating to the law of that state on a given subject, resort to carefully prepared and scholarly monographs thereon. President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F. 2d 810. Especially when such compositions contain, as the above-referred-to does, an examination and chronicle of decisions handed down by the courts of that state during the one hundred twenty-four years of existence of its Supreme Court and sixty-nine years' existence of its intermediate appellate courts. Reasoning from the decision of the Supreme Court of Missouri in State ex rel. Jones Store Co. v. Shain, supra, Professor Overstreet patently points out that if the decision of that Court, in that case, is to be literally taken and applied in all cases except those where implied warranties of fitness for a "particular" purpose is involved, "then the cold, hard fact must be that there is no implied warranty of merchantability in (that) state." That such decision must be literally taken and applied seems manifest from the manner of decision in which the Supreme Court of Missouri has ruled in that class of litigation and made application of the doctrine of implied warranty of fitness. To confine such doctrine to contractual obligations, as that Court has previously done, a priori, excludes the beneficence of the doctrine to one not a party to the contract, such as here. Cf. Conner v. Great Atlantic & Pacific Tea Co., D.C., 25 F.Supp. 855. We note the conflict between the ruling made in the Conner case, with that made in Williams v. Campbell Soup Co., D.C., 80 F.Supp. 865. Both such cases involved food for immediate consumption. We are not vitally concerned with such conflict. We only intend to here emphasize the result of application of the doctrine. Suffice it to say that in the only decision of the Supreme Court of Missouri in which implied warranty in that class of litigation has been dealt with, that Court gave no expression of its mind so far as liability under the doctrine was concerned, but contended itself to dispose of the case on a question of sufficiency of proof. See Stewart v. Martin, 353 Mo. 1, 181 S.W.2d 657. Rightfully, the query is made, in light of the application made of the doc-

trine in State ex rel. Jones Store Co. v. Shain, supra, and Zesch. v. Abrasive. Co. v. Philadelphia, supra, whether "the failure, or refusal, of the Court, to state what it thought the law on this point should be, has * * * a rather ominous meaning;" and that the action of the Court there taken can be interpreted "as indicating that it may, in the future, strike down the courts of appeals' authorities on (the) point." See Overstreet, supra, loc. cit. p. 164.

■ Regardless of supposition, it clearly appears from a consideration of the foregoing authorities of the Supreme Court of Missouri, that the convincing manifestation to be drawn from the "definitive law" and "considered dicta" of that Court, is that the doctrine of implied warranty of "merchantability" would not be extended to include the donee of a vendee of a retail vendor, or applied against the remote manufacturer of a product such as here involved. That the rule as to liability in cases such as the instant one rests in tort, in Missouri, under the doctrine of res ipsa loquitur, and that the mind of the Supreme Court of Missouri is that such a rule of liability "is sane, logical, reasonable, and practical, and in accord with the rule of decision in (that) state." Stolle v. Anheuser-Busch, Inc., 307. Mo. 520, 271 S.W. loc. cit. 500, 39 A.L.R. 1001. See also Riecke v. Anheuser-Busch Brew. Ass'n, 206 Mo.App. 246, 227 S.W. 631; Kees v. Canada Dry Ginger Ale, Inc., Mo. App., 199 S.W.2d 76; Stephens v. Coca Cola Bottling Co., Mo.App., 215 S.W.2d 50.

■ Though plaintiffs have here cast the cause of action, stated in the complaint, as for breach of implied warranty, yet it clearly appearing that they have a claim against defendant, under Missouri law in tort, the first defense proffered by defend- ant must be denied. If the facts alleged in a complaint reveal that a plaintiff is entitled to any kind of relief, it is sufficient and should not be dismissed. Hawkeye Casualty Co. v. Rose, D.C., 8 F.R.D. 586. The Federal Rules of Civil Procedure enjoin us to see that a "just, speedy, and inexpensive determination (is had) of every action." Rule 1, Federal Rules of Civil Pro-

cedure, 28 U.S.C.A. No prejudice can possibly result to defendant if plaintiffs are allowed to recast their complaints and state their claims against defendant in tort. Rule 15, Federal Rules of Civil Procedure. Leave to do so is now granted to plaintiffs.